UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL BUSBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CV280 SPM |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

Plaintiff Paul Busby brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and application for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). Because the final decision is not supported by substantial evidence on the record as a whole, it is reversed.

## I. PROCEDURAL HISTORY

On April 20, 2011, the Social Security Administration denied plaintiff's February 10, 2011, applications for DIB and SSI, in which he claimed he became

disabled on May 1, 2006, because of stents in his heart; hypertension; recurrent chest pain; back, shoulder, knee, and foot pain; depression; and diabetes. (Tr. 94-95, 140-47, 200-13, 259.)[1] Plaintiff subsequently amended his alleged onset date to September 11, 2009. (Tr. 225.) At plaintiff's request, a hearing was held before an administrative law judge (ALJ) on July 13, 2012, at which plaintiff and a vocational expert testified. (Tr. 25-71.) On December 28, 2012, the ALJ issued a decision denying plaintiff's claims for benefits, finding plaintiff able to perform work as it exists in significant numbers in the national economy. (Tr. 5-19.) On December 20, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-3.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, plaintiff claims that the final decision is not supported by substantial evidence on the record as a whole, arguing that the ALJ erred in determining his residual functional capacity (RFC) by failing to provide a rationale that is supported by some medical evidence; by improperly relying on plaintiff's daily activities and opinions of non-examining physicians; and by failing to consider medical evidence that demonstrated plaintiff's heart condition to be

---

[1] Plaintiff previously filed applications for benefits in March 2007, which were denied after a hearing by an administrative law judge on December 23, 2008. After the Appeals Council denied plaintiff's request for review of the decision, plaintiff appealed the matter to this Court for judicial review. *See Busby v. Astrue*, Cause No. 4:09CV1742 CAS (E.D. Mo. 2009). On January 20, 2011, the Honorable Charles A. Shaw affirmed the final decision of the Commissioner in that case. *Id.* at Doc. #22 (order).

disabling. Plaintiff also claims that the ALJ posed an inadequate hypothetical to the vocational expert given the inadequate nature of the RFC assessment. For the reasons that follow, the matter will be remanded for further consideration.

## II. Factual Background

At the time of the hearing before the ALJ, plaintiff was fifty-two years of age. Plaintiff stands five feet, nine inches tall and weighs 207 pounds. (Tr. 29-30.) Plaintiff lives with his daughter, having moved in with her four months prior to the hearing. (Tr. 50, 54.) Plaintiff left school in the eighth or ninth grade. He attempted to earn his GED but failed numerous times. He learned automotive repair from his father and uncle. (Tr. 29-31.) Plaintiff testified that he can read but does not understand what he reads. (Tr. 31-32.)

Plaintiff worked as an auto mechanic at car dealerships and at an automotive center from June 1984 to May 2006. (Tr. 272.) Plaintiff testified that he cannot work because he has back problems caused by bad discs. Plaintiff testified that his doctor has recommended surgery, but he is reluctant because of his diabetes condition. (Tr. 35-36.) Plaintiff testified that he cannot lift more than thirty or thirty-five pounds. He cannot bend over longer than ten to fifteen minutes. (Tr. 37, 63.) Plaintiff is limited to walking a block or two because of pain and then must sit for fifteen or twenty minutes. (Tr. 37.) He can sit up to half an hour at a time. (Tr. 63.) Plaintiff testified that he is limited by his back pain to standing for

about five to ten minutes.  He has taken Vicodin and Norco for his back pain for six or seven years.  Plaintiff testified that the medication makes him tired and that he has irregular sleep patterns.  (Tr. 38-39, 61-62.)

Plaintiff testified that he also experiences swelling in his knees once or twice a month so significant that he must wear shorts because his pants legs will not fit over the swelling.  Plaintiff testified that swelling occurs if he stands or walks too much and that he sometimes experiences discoloration in his legs.  Plaintiff testified that his doctors do not know what causes the problems, but they give him medication that decreases the swelling.  Surgery has been recommended.  Plaintiff testified that he sometimes needs help getting up from a seated position because of pain in his back and legs.  (Tr. 35-36, 39, 53-54.)

Plaintiff also testified that he sustained a concussion when he fell off of a two-story roof as a child and was unconscious for a period of weeks.  Plaintiff testified that his aunt told him that the fall "affected [him] a lot," and his school performance and ability to pay attention declined after the fall.  Plaintiff quit school so that he could work.  Plaintiff testified that he never underwent an educational evaluation.  (Tr. 36, 41-42.)  Plaintiff testified that his memory continues to be affected because of the fall.  (Tr. 43.)

Plaintiff testified that he also has uncontrolled diabetes that makes him sweat, feel "weird," and feel about to pass out.  (Tr. 36, 43-44.)  Plaintiff takes

medication for the condition. (Tr. 47.)

Plaintiff testified that he also has heart problems and experiences numbness in his hands and feet three or four times a week. Plaintiff testified that the numbness lasts for about twenty to thirty minutes during which time he cannot move his hands and is unable to grip or grasp things. Plaintiff testified that he becomes afraid during such episodes because he thinks he is having a heart attack, which then elevates his blood pressure. Plaintiff testified that he calls his daughter who then comes to check on him. (Tr. 36, 44-46.) Plaintiff testified that his heart condition also causes him to be tired and short of breath. He has had two stents placed in his heart. (Tr. 47.) Plaintiff currently experiences chest pains two or three times a week that last fifteen minutes or longer, but they go away. Plaintiff testified that he is unable to do anything when he is having chest pain. He takes additional aspirin during these episodes. (Tr. 49.)

Plaintiff testified that he also has problems with his nerves, gets angry easily, and sometimes has suicidal tendencies. (Tr. 36.) Plaintiff has crying spells two or three times a week. Plaintiff testified that he is constantly nervous and snaps for no reason. Plaintiff testified that he becomes agitated and yells during periods when he forgets to take his medication. Plaintiff's children manage his medication for him because of his forgetfulness. Plaintiff testified that no one can calm him down when he has anger outbursts. (Tr. 50-51.) Plaintiff testified that

he does not have good people skills and had difficulty on the job with management because he does not take orders well. (Tr. 33.)

Plaintiff testified that he joined Alcoholics Anonymous (AA) in November 2011 because a woman he was dating thought he had a drinking problem. Plaintiff attends AA meetings every other Wednesday. (Tr. 55-56.) Plaintiff testified that he went to the hospital in April 2011 because he was tired of living and thought he would be better off dead, but his girlfriend at the time told hospital personnel that he drank twenty-four to thirty beers. Plaintiff testified that the girlfriend was a liar. (Tr. 60-61.) Plaintiff testified that he has not drank much since September 2009 and that he drank maybe six beers a week between then and when he quit drinking in November 2011. (Tr. 56-57.)

Plaintiff testified that before moving in with his daughter, he prepared microwave meals for himself, but his daughters did the laundry and the cleaning. Plaintiff was able to care for his personal needs and grooming. Plaintiff testified that he currently helps by taking out the trash. (Tr. 54-55.) Plaintiff also works on his daughter's cars by changing the oil and replacing the brakes. Plaintiff testified that he spends most of his time watching his grandchildren two or three days a week. Plaintiff testified that his grandchildren are five months, nine months, and three years old and that the work involved is more difficult than any job he thought he would ever have. (Tr. 34.) Plaintiff testified that he stays at home with the

children where they watch television, but he sometimes takes them to the pool. Plaintiff does not swim, but he sits on the side or goes into the shallow end. (Tr. 40.) Plaintiff no longer drives because he does not have a license. (Tr. 52.)

A vocational expert, John E. Grandfeld, also testified at the hearing. Mr. Grandfeld classified plaintiff's past work as an auto mechanic as medium and skilled. (Tr. 65.) In response to a hypothetical question by the ALJ, Mr. Grandfeld testified that a person of Plaintiff's age who had the same education and work history as Plaintiff and who was limited to light work could perform work as a self-service station attendant, repair service estimator, and production assembler even if the person were further limited to jobs that did not require climbing ladders, ropes, or scaffolding; dealt primarily with things rather than people; and required only occasional interaction with co-workers and supervisors. (Tr. 66-67). Mr. Grandfeld further testified that if such a person needed to change positions from standing to sitting, he could continue to perform work as a self-service station attendant and as a repair service estimator, as well as additional work as a photocopy machine operator, of which 500 such jobs exist in the St. Louis area and 60,000 nationally. (Tr. 68.) However, if the same individual would lose his ability to use his hands three or four times a week for up to thirty minutes at a time, Mr. Grandfeld testified that such a circumstance would not be tolerated. (Tr. 70).

## III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for DIB and SSI under the Social Security Act, plaintiff must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Step 1 considers whether the claimant is engaged in substantial gainful activity. If so, disability benefits are denied. At Step 2, the Commissioner decides whether the claimant has a "severe" medically determinable impairment or combination of impairments, meaning that which

significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled. If the impairment(s) is severe, the Commissioner then determines at Step 3 whether such impairment(s) is equivalent to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment(s) meets or equals one of the listed impairments, he is conclusively disabled.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *See also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five step disability analysis). If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v);

*McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

Applying the foregoing disability analysis, the ALJ found plaintiff to meet the insured status requirements of the Social Security Act through December 31, 2011. The ALJ found that plaintiff had not engaged in substantial gainful activity since September 11, 2009, the amended alleged onset date of disability. The ALJ found plaintiff's CAD, obesity, first metatarsophalangeal osteoarthritis of both feet, alcohol abuse, and depression to be severe impairments, but that they did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 10-12.) The ALJ found plaintiff to have the RFC to perform light work except that he could not perform work requiring climbing ladders, ropes, or scaffolding; and was limited to work dealing primarily with things rather than people, but could occasionally relate with co-workers and supervisors. (Tr. 14.) The ALJ found plaintiff unable to perform his past relevant work.

Considering plaintiff's age, education, work experience, and RFC, the ALJ used vocational expert testimony to support a finding that plaintiff could perform other work existing in significant numbers in the national economy, and specifically, in a self-service auto shop and as a repair service estimator and production assembler. The ALJ thus found that plaintiff was not under a disability from September 11, 2009, through the date of the decision. (Tr. 17-18.)

## V. DISCUSSION

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by

substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall*, 274 F.3d at 1217 (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252

(8th Cir. 1992) (internal quotation marks and citation omitted); *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

Plaintiff challenges the manner and method by which the ALJ determined his RFC and further contends that the hypothetical question posed to the vocational expert was inadequate inasmuch as it was based upon an RFC that was not supported by substantial evidence. For the following reasons, plaintiff's argument is well taken.

### B. The ALJ's RFC Determination Is Not Supported By Substantial Evidence

After finding at Step 3 of the sequential analysis that plaintiff's impairments did not meet the criteria for listing level disability, the ALJ assessed plaintiff's RFC.[2] A claimant's RFC is the most he can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.

---

[2] Plaintiff argues that the ALJ should have found at Step 3 that his CAD meets Listing 4.02B(3)(a) given his achievement of only 1 MET during the stress echocardiogram in December 2010. However, the criteria of *both* 4.02A and 4.02B must be satisfied for an impairment to meet Listing 4.02. *See* 20 C.F.R., Subpart P, Appendix 1, § 4.02. Assuming *arguendo* that the results of the stress test satisfy 4.02B of the listings, plaintiff does not argue, nor does the record show, that his impairment meets the criteria set out in 4.02A. Therefore, plaintiff's claim that his CAD meets Listing 4.02 fails.

2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). Because a claimant's RFC is a medical question, some medical evidence must support the ALJ's RFC determination. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Eichelberger*, 390 F.3d at 591; *Hutsell v. Massanari*, 259 F.3d 707, 711-12 (8th Cir. 2001). As such, the ALJ must "consider at least some supporting evidence from a [medical professional]" and should obtain medical evidence that addresses the claimant's ability to function in the workplace. *Hutsell*, 259 F.3d at 712 (internal quotation marks and citation omitted). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. *Id.*

In the instant case, the only medical evidence cited by the ALJ to support his RFC determination was the State agency Physical RFC Assessment signed by Dr. Tull on March 23, 2012. The ALJ appeared to accord significant weight to this opinion evidence, reasoning only that Dr. Tull had considered the medical evidence of record at the time he rendered his opinion and because the Assessment supported the ALJ's own RFC findings. (Tr. 16.) According significant weight to this Assessment for these reasons was error.

First, opinions of a non-treating, non-examining physician do not normally constitute substantial evidence on the record as a whole upon which an RFC determination may be soundly based. *Vossen,* 612 F.3d at 1016. Further, relying

- 14 -

on opinions of non-medical single decision makers as medical evidence of a claimant's RFC is legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007).[3] Nevertheless, regardless of the diminished weight generally given to an opinion rendered by a non-examining physician, the record here does not support the ALJ's reasons for according any weight to the RFC Assessment signed by Dr. Tull. As noted *supra*, the Assessment was originally completed in April 2011 by Jim McGowin, a non-medical single decision maker, upon his review of the medical evidence of record dated through March 10, 2011. Although Dr. Tull signed this Assessment in March 2012, he did not review any medical evidence beyond that reviewed by Mr. McGowin (*compare* Tr. 89-90 *with* Tr. 1005-06) despite numerous treatment notes from treating physicians and other medical sources that were added to the record subsequent to Mr. McGowin's completion of the Assessment. Because the record does not show Dr. Tull to have reviewed all of the pertinent medical evidence giving rise to plaintiff's claims, it was error for the ALJ to accord significant weight to this non-examining physician's opinion. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Such error is especially notable here given the ALJ's erroneous finding that Dr. Tull had indeed reviewed the evidence of record.

---

[3] A non-medical single decision maker is not an "acceptable medical source" under the Regulations. As such, he cannot be considered a State agency medical consultant whose opinion must be considered and weighed by an ALJ in determining a claimant's RFC. 20 C.F.R. §§ 404.1616(b), 416.1016(b); SSR 96-6p, 1996 WL 362203, at *4 (Soc. Sec. Admin. July 2, 1996).

The only other reason provided by the ALJ for relying on the RFC Assessment signed by Dr. Tull is that it generally supported the ALJ's own RFC findings. Given that the ALJ failed to provide any other medical support for his RFC findings, it cannot be said that this circular reasoning to credit the State agency's RFC Assessment is sufficient to establish substantial evidence of plaintiff's RFC. A review of the ALJ's decision shows his RFC determination to be based upon the opinions rendered in this State agency Assessment, his discrediting of plaintiff's subjective complaints, and his determination that plaintiff's CAD was stable. (Tr. 14-17.) In the portion of his decision addressing plaintiff's RFC, the ALJ focused on that evidence of record that served to discredit plaintiff's complaints and engaged in no discussion or analysis of the medical evidence as it related to plaintiff's RFC, that is, what he is able to do despite his impairments. Drawing a conclusion regarding credibility is not equivalent to demonstrating by medical evidence that a claimant has the RFC to perform certain work-related activities. *Estabrook v. Apfel*, 14 F. Supp. 2d 1115, 1122 (S.D. Iowa 1998), *cited approvingly in Graham v. Colvin*, No. 4:12-cv-00863-SPM, 2013 WL 3820613, at *7 (E.D. Mo. July 23, 2013) (memorandum opinion). Instead, the ALJ's RFC determination must discuss and describe how the evidence *supports* each conclusion and must cite specific medical facts and non-medical evidence in doing so, as well as resolve any material inconsistencies or ambiguities in the

evidence of record. SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996). The ALJ failed to engage in this process here.

The ALJ determined plaintiff to have the RFC to engage in light exertional work[4] except that he cannot engage in work "requiring climbing ladders, ropes, or scaffolding"; was further limited to work "dealing primarily with things rather than people"; and could "occasionally relate with co-workers and supervisors." (Tr. 14.) While the medical evidence of record spans from January 2007 to April 2012, no evidence from any properly credited medical source refers to plaintiff's ability to engage in work-related activities on or after his alleged onset date of disability. The record includes substantial medical evidence that plaintiff experienced continual pain and tenderness about his back and other joints for which he was prescribed significant pain medication; that he excessively drank alcohol because of his pain; that he received instruction from his treating sources to elevate his legs because of pain and swelling in his lower extremities; and that he was prescribed multiple psychotropic medications over a period of years for depression, anxiety, and irritability. There is other evidence of record, however, that plaintiff repeatedly had normal range of motion and exhibited no abnormal psychological behaviors during routine examinations. Nevertheless, the ALJ did not discuss this

---

[4] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

evidence when determining plaintiff's RFC.  The ALJ's limited reference to plaintiff's stable CAD with no other discussion or analysis of the other substantial medical evidence of record is insufficient to support his RFC findings or any of the limitations he identified.  *See Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001) (ALJ's decision unclear as to the medical basis for the RFC assessment).

While the Court is mindful that the plaintiff bears the burden to establish his RFC, the ALJ's duty to develop the record is independent of this burden.  *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).  Here, despite the extensive medical record in this case, including numerous treatment records from plaintiff's visits with treating and other medical sources, none of these records address the extent to which plaintiff's impairments affect his ability to perform work-related activities on a regular and continuing basis.  Nevertheless, the ALJ concluded that plaintiff's impairments caused a number of limitations, including non-exertional limitations.  Because the ALJ must articulate the medical and other evidence upon which he bases his RFC determination, and he failed to do so here, it cannot be said that the RFC determination is supported by substantial evidence on the record as a whole.[5]  In the absence of any thoughtful discussion or analysis by the ALJ, this Court would be required to weigh the evidence in the first instance or review the factual

---

[5] Given this faulty RFC determination, the hypothetical question posed to the vocational expert based upon this RFC was likewise flawed.  *Lauer*, 245 F.3d at 706.

record *de novo* in order to find the ALJ's RFC assessment to be supported by substantial evidence on the record as a whole. This the Court cannot do. *See Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

Inasmuch as an ALJ's RFC assessment must be based on some medical evidence of the claimant's ability to function in the workplace and must discuss and describe how such evidence supports each RFC conclusion, the ALJ is encouraged upon remand to contact plaintiff's treating physician(s) for a functional assessment as to how plaintiff's impairments affect his ability to engage in specific work-related activities. *See Bowman v. Barnhart*, 310 F.3d 1080, 1085 (8th Cir. 2002); *see also Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006) (ALJ should recontact treating physician when information provided by physician is inadequate for the ALJ to determine whether the claimant is disabled). The ALJ is also permitted to order medical examinations and tests in order for him to make an informed decision as to disability. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985); 20 C.F.R. §§ 404.1517, 416.917.

Accordingly, the ALJ upon remand shall obtain additional medical evidence that addresses the extent to which plaintiff's impairments, both severe and non-severe, affect his ability to function in the workplace. Upon receipt of such evidence, the ALJ shall reconsider the record as a whole, including the medical and non-medical evidence of record as well as plaintiff's own description of his

symptoms and limitations, and reassess plaintiff's RFC. Such reassessed RFC shall be based on some medical evidence in the record and shall be accompanied by a discussion and description of how the evidence supports each RFC conclusion. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007); SSR 96-8p, 1996 WL 374184, at *7. Although the undersigned is aware that the ALJ's decision as to non-disability may not change upon remand after proper consideration of the medical evidence of record and plaintiff's RFC based thereon, *see Pfitzer v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999), the determination is nevertheless one that the Commissioner must make in the first instance.

Therefore, for the reasons stated above on the claims raised by plaintiff on this appeal,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

 /s/ *Shirley Padmore Mensah*
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of January, 2015.